UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

SEAN PHILLIPS,

                Petitioner,                Case No. 1:19-cv-842

v.                                    Honorable Hala Y. Jarbou

RANDEE REWERTS,

                Respondent.

_____/

## **REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Sean Phillips is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Following a fifteen-day jury trial in the Mason County Circuit Court, Petitioner was convicted of second-degree murder, in violation of Mich. Comp. Laws § 750.317. On December 9, 2016, the court sentenced Petitioner to a prison term of 19 to 45 years.

On October 8, 2019, Petitioner filed his habeas corpus petition raising four grounds for relief, as follows:

> I.    Petitioner was denied his right to a fair trial and due process of law by the prosecutor's repeated appeals to the jury's sympathy and civic duty, in the alternative, Petitioner was denied his right to effective assistance of counsel by trial counsel's failure to object.

II.     The district court reached the correct result in refusing to bind over the case for trial.  The circuit court and the court of appeals erred in reversing the district court's ruling because there was not sufficient admissible evidence showing probable cause that the charged crime was committed and that the defendant committed it.

III.    Due process requires vacating Petitioner's conviction and sentence where there was legally insufficient evidence to convict him of second-degree murder and where Petitioner's inculpatory statements were inadmissible under the corpus delicti rule.

IV.     Petitioner is entitled to jail credit dating from his original arrest date.

(Pet., ECF No. 1, PageID.7–11.)  Respondent has filed an answer to the petition (ECF No. 4) stating that the grounds should be denied because they are procedurally defaulted, not cognizable, and/or meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are not cognizable on habeas review or are meritless.  Accordingly, I recommend that the petition be denied.

## Discussion

## I.    Factual allegations

Four-month-old Kate Phillips disappeared on June 29, 2011.  She was last seen in Petitioner's car.  Following a ten-day jury trial in Mason County, Petitioner was tried and convicted of unlawful imprisonment of Kate, in violation of Mich. Comp. Laws § 750.349b.  The court sentenced Petitioner to ten to fifteen years' imprisonment on June 5, 2012.

2

While Petitioner was serving his sentence, he began corresponding with Kate's mother.  In response to questions from the mother, Petitioner wrote a five-page letter that provided some details regarding the circumstances surrounding Kate's death and Petitioner's role in that death.  Based on that letter and comments Petitioner made to another inmate, as well as the evidence relating to Kate's disappearance, the prosecutor charged Petitioner with murder.

Following the prosecutor's presentation of proofs, the trial court directed a verdict of not guilty of first-degree murder.  The jury convicted on the lesser charge. Petitioner, with the assistance of counsel, appealed his conviction.  By unpublished opinion dated April 10, 2018, the Michigan Court of Appeals rejected Petitioner's challenges and affirmed the trial court.  Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court.  By order entered October 30, 2018, the supreme court denied leave to appeal.

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693–94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the

state court proceeding."    28 U.S.C. § 2254(d).   "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)).   This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529

U.S. at 405–06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721.  "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664.  "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review.  The federal court is not free to consider any possible factual source.  The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).  "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721.  Then, the petitioner's claim is reviewed *de novo*.  *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.    Prosecutorial misconduct

Petitioner contends that the prosecutor improperly appealed to the sympathy of the jury when he made the following arguments in closing:

> There is no footprint too small to leave an imprint on the face of the earth.  Every new life, no matter how fragile, nor how brief, forever changes the world, in no small way.
>
> Katherine Phillips' life was no exception.  And as the sands of time blow her remnants to the wind, we are left behind with the tragic legacy of the missing baby and a frantic search by a concerned community.

6

She leaves behind the haunting memory of a dead infant, alone, helpless, naked, her very whereabouts unknown.

\*     \*     \*

Katherine Phillips relied on the defendant to protect her from harm.  Helpless, defenseless, and totally dependent on the defendant, she had no capacity to foresee that his own instincts for self-preservation and convenience were stronger than love for his daughter—really stronger than any kind of emotion that he had for her.

\*     \*     \*

Katherine Phillips should've known the warmth of a comforting hug.  Instead, she found the coldness of hands that put her to death.

She should've known a voice that was heard in her ear: You are loved.  Instead, the winds whispered over her abandoned body.

No dad here, but a murderer, who betrayed a sacred covenant with his daughter just as surely as he violated the laws of man that you are here to decide today.  And as a result, we have a throwaway baby.

\*     \*     \*

How could there ever be enough justice for the unceremonious disposal of a tiny baby, thrown away like a piece of trash?

But might I remind you of these facts:  the fact that Baby Kate deserved better than to be sentenced to death by her own father.  The fact that the defendant chose to betray the sacred covenant with his daughter.  The fact that the dead cannot cry out for justice and Baby Kate's voice has been silenced.

(Trial Tr. XIII, ECF No. 5-19, PageID.1887–1888, 1897; Pet'r's Appeal Br., ECF No. 5-25, PageID.3085.)

For a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v.*

*DeChristoforo*, 416 U.S. 637, 643 (1974)).  "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental.  *See United States v. Young*, 470 U.S. 1, 11–12 (1985).  The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court.  *See id.* at 12–13; *Darden*, 477 U.S. at 181–82; *Donnelly*, 416 U.S. at 646–47; *Berger v. United States*, 295 U.S. 78, 84–85 (1935).  "[A] prosecutor's comments violate the defendant's right to due process only if, ***in context***, they 'undermine[d] the fundamental fairness of the trial and contribute[d] to a miscarriage of justice.'"  *Winowiecki v. Gidley*, No. 20-1461, 2020 WL 6743472, at *2 (6th Cir. Sept. 8, 2020) (quoting *Young*, 470 U.S. at 16) (emphasis added); *see also United States v. McQuarrie*, 817 F. App'x 63, 81 (6th Cir. 2020) ("[C]ontext is key . . . .").

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review."  *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  Indeed, "the Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in

prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645).  Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim " 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.' " *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington*, 562 U.S. at 103).

Petitioner describes the prosecutor's argument as an impermissible "civic duty" argument.  That description begs the question:  what is a "civic duty" argument? There is no clearly established federal law on that point.  The Supreme Court has frequently referenced jury service as a "civic duty," *see, e.g., Dietz v. Bouldin*, 136 S.Ct. 1885, 1896 (2016) ("Juries are of course an integral and special part of the American system of civil justice.  Our system cannot function without the dedication of citizens coming together to perform their civic duty and resolve disputes"); but the Court has never defined, or even commented on, "civic duty" arguments.

Although the Court has not mentioned "civic duty" arguments, it has commented on the dangers of prosecutorial argument that is "wholly irrelevant to any facts or issues in the case, the purpose and effect of which could only have been to arouse passion and prejudice." *Viereck v. United States*, 318 U.S. 236, 247 (1943). The prosecutor's challenged argument in *Viereck* was as follows:

> In closing, let me remind you, ladies and gentlemen, that this is war.  This is war, harsh, cruel, murderous war.  There are those who, right at this very moment, are plotting your death and my death; plotting our death and the death of our families because we have

committed no other crime than that we do not agree with their ideas of persecution and concentration camps.

This is war.  It is a fight to the death.  The American people are relying upon you ladies and gentlemen for their protection against this sort of a crime, just as much as they are relying upon the protection of the Men who man the guns in Bataan Peninsula, and everywhere else. They are relying upon you ladies and gentlemen for their protection.  We are at war.  You have a duty to perform here.

As a representative of your Government I am calling upon every one of you to do your duty.

*Id*. n. 3.  The *Viereck* Court went on to heartily condemn that argument:

At a time when passion and prejudice are heightened by emotions stirred by our participation in a great war, we do not doubt that these remarks addressed to the jury where highly prejudicial, and that they were offensive to the dignity and good order with which all proceedings in court should be conducted.  We think that the trial judge should have stopped counsel's discourse without waiting for an objection.  "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.  As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer.  He may prosecute with earnestness and vigor—indeed, he should do so.  But, while he may strike hard blows, he is not at liberty to strike foul ones.  It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. United States*, 295 U.S. 78, 88 [(1935)].

*Id*. at 248.  Although the *Viereck* Court's statement may be stirring, and though it could provide the foundation for a "civic duty" argument proscription, it is entirely dicta.  The Court specifically acknowledged that the "duty" argument was not the error that prompted reversal, but was simply another issue that "might well have placed the judgment of conviction in jeopardy." *Id*. at 247.  This Court may consider

only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams*, 529 U.S. at 412; *Bailey,* 271 F.3d at 655.

Labeling an argument a "civic duty" argument does not render that argument prosecutorial misconduct.  The determination of impropriety requires going deeper; the deeper inquiry is whether the argument is irrelevant such that its only purpose would be to arouse passion and prejudice.  The fact that the argument invites the jurors to satisfy a civic duty is relevant to that analysis, but it is not dispositive.

In *United States v. Solivan*, 937 F.2d 1146 (6th Cir. 1991), the Sixth Circuit Court of Appeals considered exactly how the "civic duty" analysis fits within the more fundamental inquiry into whether the prosecutor has attempted to appeal to the jurors' passion or prejudice:

> Unless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not *per se* impermissible.  *See Henderson v. United States*, 218 F.2d 14, 19–20 (6th Cir.), *cert. denied*, 349 U.S. 920 (1955).[2]  Our determination of whether comments are calculated to incite prejudice and passion in the jury is informed by the Supreme Court opinion in *Viereck*.

> \*    \*    \*

> The remarks in the instant case are analogous to the comments adjudged inflammatory and prejudicial in *Viereck*.  The fairness or unfairness of comments appealing to the national or local community interests of jurors in a given instance will depend in great part on the nature of the community interest appealed to, and its relationship to, and the nature of, the wider social-political context to which it refers.  The correlation between the community interest comments and the wider social-political context to a large extent controls the determination of whether an appeal is deemed impermissible because it is calculated to inflame passion and prejudice.  The Supreme Court in *Viereck* framed the inquiry to incorporate both the purpose and effect of the comments.  In that case, in the light of contemporaneous events, which had great impact on the emotions and perceptions of jurors, the remarks "could only have . . . arouse[d] passion and prejudice."  *See id.* at 247.

11

[2] Our holding in *Henderson* and the result reached in *Alloway* reflect a general rule followed by other circuits as well.  In *United States v. Shirley*, 435 F.2d 1076 (7th Cir. 1970), the Seventh Circuit stated that the prosecutor's closing remarks concerning the increasing number of cars being stolen did not overstep the bounds of fairness and propriety and could not have worked a substantial injury to the defendant in denying him a fair trial because, even though the statements were not particularly relevant and had no bearing on the guilt or innocence of the defendant, the remarks did not contain an emotional appeal to the jurors' self-interest designed to arouse their prejudice against the defendant.  *Id*. at 1079.

The Eighth Circuit has also stated, in a case where the prosecutor told the jurors that they were the public's last shield and the district court instructed the jury to disregard the remark, that unless calculated to inflame, an appeal to the jury to act as the conscience of the community is not impermissible.  *United States v. Lewis*, 547 F.2d 1030, 1036 (8th Cir.), *cert. denied*, 429 U.S. 1111 (1976).  Similarly, the Eleventh Circuit, in *United States v. Kopituk*, 690 F.2d 1289, 1342–43 (11th Cir.1982), *cert. denied*, 463 U.S. 1209 (1983), stated that appeals to the jury to act as the conscience of the community, unless designed to inflame the jury, are not *per se* impermissible.  However, the remarks complained of in *Kopituk* were found by the court to have approached the line demarcating impermissible comment calculated to incite the jury against the accused, but not to have crossed the line into the realm of impropriety and prejudice by directly suggesting that the jurors had personal stakes in the outcome of the case.

*Solivan*, 937 F.2d at 1151–52.  The *Solivan* court went on to review several decisions where circuit courts of appeal had concluded that the argument crossed the line.  For example in *United States v. Barker*, 553 F.2d 1013, 1024–25 (6th Cir. 1977), the court concluded that it was improper "for a prosecutor to suggest that unless the defendant was convicted it would be impossible to maintain 'law and order' in the jurors' community."  *Solivan*, 937 F.2d at 1152.  Additionally, the *Solivan* court referenced several cases where prosecutor's had gone too far in suggesting that their role as jurors permitted them to do something about drug trafficking in their community.  *Solivan*, 937 F.2d at 1152–53.

12

The *Solivan* court contrasted those cases—cases where the jury was asked to look beyond the evidence against a particular defendant and consider the impact of their verdict on societal problems generally—with the decision in *United States v. Alloway*, 397 F.2d 105 (6th Cir. 1968). In *Alloway*, the court considered the propriety of the following argument:

> You, the jurors, are called upon in this case to be the world conscience of the community. And I'm calling on this jury to speak out for the community and let the John Alloways know that this type of conduct will not be tolerated, that we're not going to tolerate [armed robbery]. . . .

*Alloway*, 397 F.2d at 113. The *Solivan* court explained why the "conscience of the community" argument in *Alloway* was acceptable while similar argument in *Barker* and *Solivan* was not:

> The comments by the prosecutor in *Alloway* and the comments complained of in the instant case are only vaguely similar. The remarks in this case appear to us to have been deliberately injected into the proceedings to incite the jury against defendant. Given the nature of this case, involving a cocaine transaction, and the wider social context which the prosecutor sought to bring to bear on the proceedings, the national drug problem, the purpose and effect of the comments could have only been to arouse passion and prejudice. *See Viereck*, 318 U.S. at 247. We determined that the statements made in *Alloway* were not deliberately injected into the proceedings to inflame the jury. *See* 397 F.2d at 113. Indeed, examined in the light of the nature of the case and the wider social context in which the case was prosecuted, it is clear that the government's statements in *Alloway* were devoid of the sort of inflammatory content inherent in the prosecutor's statements in this case precisely because there was no comparable specific wider context of national attention and concern present in *Alloway* pertaining to armed robbery. The comments in *Alloway* did not attempt to compare or to associate the defendant with a feared and highly publicized group, such as drug dealers, as did the prosecutor in this case. The prosecutor in *Alloway* did not go beyond a mere allusion to the general need to convict guilty people, as did the prosecutor in this case, and bring to bear upon the jury's deliberations the attendant social consequences of defendant's

criminal conduct or urge the jury to convict an individual defendant in an effort to ameliorate society's woes.

\*       \*       \*

In *Alloway*, we were presented with remarks by the prosecutor which alluded only to the general criminality of the defendant's conduct in robbing a bank and the general community need to convict guilty people. The comments at issue in *Alloway* constituted a general plea which did not even specifically refer to the crime of armed robbery. Moreover, armed robbery was not and is not the specific focus of national attention as is the drug problem. In the instant case, we find that *Alloway* is inapposite because, in this case, the prosecutor went beyond the scope of the prosecutor's statements in *Alloway*, which constituted a mere innocuous reference to the community or societal need to convict guilty people.

*Solivan*, 937 F.2d at 1154–55.[1] Neither *Solivan* nor *Alloway* are of particularly recent vintage, but just a few months ago, the Sixth Circuit relied on the analysis in *Solivan* and described it as "one of the most cited cases in this circuit regarding attorney appeals to the community conscience . . . ." *United States v. Hall*, 979 F.3d 1107, 1122 (6th Cir. 2020).

The Michigan Court of Appeals analysis is generally consistent with the case authority cited above:

When considering allegations of prosecutorial misconduct, this Court must "examine the entire record and evaluate a prosecutor's remarks in context." *Id.* at 64. "[A] prosecutor is free to argue the evidence and all reasonable inferences arising from it as [it] relate[s] to . . . [the] theory of the case." *People v Johnson*, 315 Mich App 163, 201; 889 NW2d 513 (2015) (internal quotation marks omitted; alterations in original). "The prosecution has wide latitude in arguing the facts and

---

[1] The *Solivan* court also noted that "[t]he district court in *Alloway* subsequently instructed the jury to base its verdict solely on the evidence and to consider the prosecutor's argument only as it corresponded with the evidence." *Solivan*, 937 F.2d at 1154. But separate and apart from the remedial instruction, the Sixth Circuit concluded that the argument was not prosecutorial misconduct because it was not, by purpose or effect, intended to inflame the passion and prejudice of the jury.

reasonable inferences, and need not confine argument to the blandest possible terms." *Dobek*, 274 Mich App at 66.  However, "[a]ppeals to the jury to sympathize with the victim constitute improper argument." *People v Watson*, 245 Mich App 572, 591; 629 NW2d 411 (2001).  An instruction by the trial court to the jurors that they should not consider the attorneys' arguments as evidence, should not allow their sympathy or compassion for the victim to sway their decision, and should only consider admissible evidence in determining a defendant's guilt typically is sufficient to cure any alleged prosecutorial error.  See *Johnson*, 315 Mich App at 201.

Defendant claims that portions of the prosecution's closing argument amounted to repeated and inappropriate attempts by the prosecution to evoke juror sympathy.  However, a close review of the statements by the prosecution shows that, while argumentatively and persuasively worded, the closing was a summary of the facts and reasonable inferences made therefrom reflecting the prosecution's theory of the case.  This Court repeatedly has held that such arguments are permitted.  See *Johnson*, 315 Mich App at 201.

The facts introduced at trial establish that defendant drove away from Courtland's apartment with the victim in the back seat.  His whereabouts for the two hours that followed are not known.  However, the evidence at trial showed that he visited a woodsy, rough-terrain area, and had his telephone turned off during that time.  When defendant finally returned to his home, he no longer had the victim.  Further, he changed his shoes, from a pair of black Seedless brand shoes to the pair in which he was arrested.  Those black Seedless shoes were found in defendant's room, caked with mud, and plant material.  Expert testimony revealed that the plant material found on those shoes likely came from a damp, swampy area.  Additionally, defendant had the victim's clothes, turned inside-out and bundled up, in his pocket.

Much of the first portion of the closing argument that defendant challenges relates to the manner in which defendant disposed of the victim's body.  The prosecution repeatedly referenced that the victim was naked, alone, and vulnerable in the woods.  The evidence presented at trial clearly supports those inferences by the prosecution.  Defendant had the victim's clothes and there was a dirty diaper in the back seat of his car, so a logical reference would be that the victim was naked.  Further, eyewitness testimony allows for an inference that defendant spent approximately one hour in a heavily-wooded, swampy area, which supports that defendant left the victim's body there.  That inference further was supported by defendant's shoes, which contained plant material that would come from such an area and the shoes were covered

15

in dirt and mud.  Lastly, a logical reference was plain that a four-month-old infant left alone in the woods would be vulnerable.  Thus, the prosecution's statements that the victim was left alone, naked, and vulnerable in the woods, was not a call to the jury's sympathies, but instead was a summary of how the prosecution contended defendant likely committed the murder.  Arguments made from the facts and the relevant inferences therefrom are permitted.  *Id*.  Further, the prosecution was not required to use the "blandest possible terms" in making that argument.  See *Dobek*, 274 Mich App at 66.  Thus, the prosecutor's closing statements did not amount to misconduct.  See *id*.

The prosecution also referenced that the victim's existence was a problem for defendant, and that defendant's selfish goals outweighed his responsibilities to his daughter.  Testimony introduced at trial showed that defendant did not believe that the victim was his child, urged Courtland to get an abortion or to put the victim up for adoption, and generally did not want to be involved in the victim's life.  The prosecution's theory of the case was that defendant wanted the child out of his life, and when he realized that his plans for adoption or abortion were not going to come to fruition, he resorted to murder.  Consequently, the prosecution asserted that an inference from the evidence provided was that defendant had motive to get rid of the victim, he intended to do so when he left her in the woods, and therefore he was guilty of murder.  Thus, in arguing that defendant's selfish goals overwhelmed any sense of duty he had to the victim, the prosecution merely was summarizing the evidence and reasonable inferences therefrom regarding defendant's motive for the murder.  As discussed, *supra*, motive was an important issue at the trial, because it was circumstantial evidence of defendant's intent.  As noted, the prosecution is permitted to argue the facts and inferences therefrom in relationship to its theory of the case, and they need not do so in the "blandest possible terms."  See *id*.; see also *Johnson*, 315 Mich App at 201.  Consequently, the complained of statements did not amount to misconduct by the prosecution.  *Id*.

The prosecution's references to defendant's "violence," and decision to dispose the victim like "trash," were also supported by the evidence.  Defendant's letter revealed that he ripped the car seat out of his car and flung the victim on to the ground.  An inference from that fact was that defendant acted violently.  The prosecution's reference to defendant treating the victim like "trash," was an inference raised from the evidence that suggested defendant left the victim in the woods without clothes.  That inference was further supported by Burton's testimony that defendant got "rid of" the victim, and that he would never be charged with murder because no one would ever find the victim.  Thus, the prosecution properly argued, in persuasive terms, that

defendant committed an act of violence and disposed of the victim's body like it was "trash."  See *id.*; see also *Dobek*, 274 Mich App at 66.

To the extent that some other statements appear to call for the sympathy of the jury, such as the prosecution's reference to the victim's need for a "warm hug" instead of "cold hands" that committed murder, or the victim's need to hear the words "I love you," instead of having the "cold winds" blow over her body, any such error was cured by the instructions the court provided to the jury.  In those instructions, the trial court informed the jury that it should base its decision only on the admissible evidence—which did not include lawyers' arguments—and not its sympathy or prejudice.  "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors."  *People v Ericksen*, 288 Mich App 192, 199-200; 793 NW2d 120 (2010) (internal quotation marks omitted).  Thus, those "instruction[s] cured any prosecutorial error that may have occurred during . . . closing arguments."  *Johnson*, 315 Mich App at 201.

In sum, the prosecution did not commit any error, plain or otherwise, requiring reversal.

(Mich. Ct. App. Op., ECF No. 5-25, PageID.3013–3015.)

Petitioner must show that the court of appeals' determinations are contrary to, or an unreasonable application of clearly established federal law.  Yet Petitioner's only response to the court of appeals' analysis is that "repeated comments about the age of the victim" were improper and the instruction regarding the arguments not being evidence was "not sufficiently curative."  (Pet'r's Appl. for Leave to Appeal, ECF No. 5-26, PageID.3291.)  Petitioner offers nothing more in his petition or in any submissions to this Court.

The undersigned concludes that, considered against the backdrop of the prosecutorial arguments in *Solivan* and *Alloway*, the prosecutor's argument in Petitioner's case is much more like the permissible *Alloway* argument than the impermissible *Solivan* argument.  The prosecutor was not calling upon the jurors to

look outside of the specific actions for which Petitioner was being tried to address a larger societal problem, he was asking the jurors to look at the evidence regarding Petitioner's behavior and find Petitioner guilty.

The appellate court's reading of the prosecutor's closing argument is not unreasonable. It is not at all clear that the prosecutor's argument was an attempt, in purpose or effect, to inflame the passion and prejudice of the jury beyond whatever passion and prejudice might follow from the evidence that Petitioner committed the charged crimes and detrimentally impacted the lives of his victim and her family and even the community.

Petitioner's suggestion that appealing to the jurors "civic duty" is *per se* prosecutorial misconduct is plainly wrong. The prosecutor's argument here must be measured against the more general proscription against arguments intended to inflame passion and prejudice to the exclusion of proper consideration of the evidence. Such a general proscription leaves state courts a lot of leeway in resolving constitutional claims. Petitioner has failed to show that the state court's conclusion that the prosecutor's opening argument was proper is contrary to, or an unreasonable application of, clearly established federal law. Moreover, the argument here falls well within the bounds of permissible argument as established by Sixth Circuit authority. Accordingly, Petitioner is not entitled to habeas relief on this claim.

Petitioner alternatively claims that counsel rendered ineffective assistance because he failed to object to the prosecutor's argument. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to

evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  Even if a court determines that counsel's performance was unreasonable, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

When a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of

prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The Michigan Court of Appeals applied the following standard to resolve Petitioner's ineffective assistance of counsel claims:

> "Criminal defendants have a right to the effective assistance of counsel under the United States and Michigan Constitutions." *Schrauben*, 314 Mich App at 189190, citing US Const, Am VI; Const 1963, art 1, § 20. "However, effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *Schrauben*, 314 Mich App at 190. The United States Supreme Court has held that "in order to receive a new trial on the basis of ineffective assistance of counsel, a defendant must establish that 'counsel's representation fell below an objective standard of reasonableness' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012), quoting *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "When reviewing defense counsel's performance, the reviewing court must first objectively 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.'" *Jackson*, 313 Mich App at 431, quoting *Strickland*, 466 US at 690. "Next, the defendant must show that trial counsel's deficient performance prejudiced his defense—in other words, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Jackson*, 313 Mich App at 431, quoting *Vaughn*, 491 Mich at 669. This Court will not find trial counsel to be ineffective where an objection would have been futile. *Thomas*, 260 Mich App at 457. "The defendant 'bears the burden of demonstrating both deficient performance and prejudice[;] the defendant [also] necessarily bears the burden of establishing the factual predicate for his claim.'" *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015), quoting *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

(Mich. Ct. App. Op., ECF No. 5-25, PageID.3021.).  The court of appeals' standard is taken directly from *Strickland*.  There is no question that the court applied the correct standard; the only question is whether the court applied the standard reasonably.

The court of appeals concluded that, applying the *Strickland* standard, Petitioner had failed to demonstrate that his counsel was ineffective in failing to object to the prosecutor's argument:

> [D]efendant asserts that his counsel at trial rendered ineffective assistance of counsel by failing to object to the prosecution's allegedly improper closing argument.  As discussed in Section IV of this opinion, the prosecution's statements during closing argument did not improperly call on the sympathies of the jurors, or, if they did only briefly, any issue was cured by the trial court's jury instructions.  With respect to the portions of the prosecution's closing arguments that were not improper, defense counsel was not ineffective for failing to object thereto because such an objection would have been futile.  *Id*. Considering the small portions that may have sought sympathy from the jury, defense counsel's lack of objection was ultimately harmless, where the jury was properly instructed not to consider the prosecution's statements as evidence and to disregard any sympathy.  Therefore, defendant is unable to prove that any possible errors by defense counsel "prejudiced his defense." *Jackson*, 313 Mich App at 431.

As such, defendant was not provided with ineffective assistance of counsel.

(Mich. Ct. App. Op., ECF No. 5-25, PageID.3021–3022.)

Petitioner has not responded to the court of appeals' analysis at all—not in the Michigan Supreme Court and not in this Court.  Thus, he has certainly failed to show that the court of appeals' determinations are contrary to, or an unreasonable application of, *Strickland*.  Moreover, he cannot make that showing.  "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).  And jurors are presumed to follow their instructions.  *See, e.g., Weeks v. Angelone*, 528 U.S. 225, 234 (2000).  Therefore, Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim.

**IV.    Improper bindover**

Petitioner argues that, at the preliminary examination, the prosecutor failed to establish probable cause that the crime had been committed and committed by Petitioner.  Petitioner argues that flaws in the preliminary examination proceedings render his conviction invalid.  Even if Petitioner were correct in stating that his preliminary examination proceedings were flawed, it would not entitle him to habeas relief.  Challenges to the propriety of initial proceedings in the state courts are not cognizable in federal habeas corpus, because they do not undermine the validity of a conviction.  *See Gerstein v. Pugh*, 420 U.S. 103, 119 (1975); *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) ("Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review."); *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986); *Lewis v. Procunier*, 746 F.2d 1073, 1075 (5th Cir. 1984) (allegation of defective indictment insufficient to state a claim for habeas relief); *Johnson v. Turner*, 429 F.2d 1152, 1154 (10th Cir. 1970) (alleged defect in state complaint not cognizable in habeas corpus); *Hogan v. Ward*, 998 F. Supp. 290, 294-95 (W.D.N.Y. 1998) (petitioner not entitled to relief on ground that state felony complaint was defective).  Taken at face value, Petitioner's allegations establish, at best, that his bindover to circuit court was not based upon a proper showing of probable cause.  It is well-settled, however, that a convicted defendant cannot upset a conviction on the argument that no probable cause was shown prior to conviction.  *See United States v. Saussy*, 802 F.2d 849, 852 (6th Cir. 1986).  Consequently, even if Petitioner could demonstrate that the bindover was not supported by a sufficient factual showing, this in no way impugns his conviction, which was based upon a jury

verdict, not on the preliminary examination proceedings.  *See United States v. Mechanik*, 475 U.S. 66, 73 (1986) ("Jury's verdict rendered harmless any conceivable error in charging decision . . . .").  Petitioner is not entitled to habeas relief on this claim.

## V.    Insufficiency of the evidence

Petitioner contends that the evidence was insufficient to convict him of murder where there was no body and no person witnessed Petitioner harming the baby or disposing of the body.  (Pet., ECF No. 1, PageID.10.)  In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court announced the following standard for resolving sufficiency claims:  the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319.  The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Id.*  Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401–02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence.  *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002).  The habeas court need only examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

23

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).    This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals applied the following standard to resolve Petitioner's insufficient evidence claim:

> "To determine whether the prosecutor has presented sufficient evidence to sustain a conviction, we review the evidence in the light most favorable to the prosecutor and determine 'whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt.'" *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013), quoting *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010).  "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015), quoting *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

> There is sufficient evidence for a guilty verdict where "a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *Tennyson*, 487 Mich at 735. "The prosecution need not negate every reasonable theory of innocence, but need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant." *Henderson*, 306 Mich App at 9.  "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016).  Any and all conflicts that arise in the evidence must be resolved "in favor of the prosecution." *Henderson*, 306 Mich App at 9.  "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded

those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

(Mich. Ct. App. Op., ECF No. 5-25, PageID.3016-17.)  Although the court of appeals cited state authority in support of its standard, the cited cases track back to *People v. Wolfe*, 489 N.W.2d 748 (Mich. 1992), and *People v. Hampton*, 285 N.W.2d 284 (Mich. 1979).  The *Wolfe* and *Hampton* cases derived the standard directly from *Jackson*. *Wolfe*, 489 N.W.2d at 750–51; *Hampton*, 285 N.W.2d at 287–88.  Thus, there can be no question that the court of appeals applied the standard called for by clearly established federal law, leaving only the question as to whether it applied the standard reasonably.

After setting out the standard, the court of appeals identified the elements of the offense Petitioner was accused of committing.   The court then thoroughly reviewed the evidence regarding those elements and, as *Jackson* directs, evaluated the evidence in a light that favored the prosecution to determine whether a rational trier of fact could have found the existence of the elements:

> "In order to convict a defendant of second-degree murder, the prosecution must prove: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Roper*, 286 Mich App 77, 84; 777 NW2d 483 (2009) (internal quotation marks omitted).

> \*     \*     \*

> Defendant asserts that there was insufficient evidence of every element of second-degree murder.  First, therefore, defendant challenges the prosecution's proof that the victim died.  This Court has held that "the victim's body is not necessary" to prove that a death occurred. *People v Fisher*, 193 Mich App 284, 287; 483 NW2d 452 (1992). Defendant's argument for this element relies primarily on his assertion that his letter was inadmissible pursuant to the *corpus delicti* rule regarding confessions.  However, as noted, that letter was admissible,

25

and provides sufficient proof of the victim's death.  Particularly, in that letter, defendant stated that he threw the victim out of the back seat of his car.  He then held her, but believed it was too late to do anything.  Defendant stated that he took the victim to an unspecified area and left her in a "peaceful place."  Further, defendant told Burton that the victim would never be found, that he got rid of her, and so would never be charged with murder.  Although the victim's body was never discovered, the foregoing evidence provides sufficient circumstantial evidence of the victim's death.  A reasonable juror could infer from defendant's statements that he got rid of the victim, he held her until it was too late, and he left her in a peaceful place, that the victim died.  Even though Burton was equivocal at trial about whether defendant said he got rid of "the baby" or "the body," defendant's reference to never being tried for murder provides a logical inference that the victim died.  This is especially true because the victim still has not been found nearly seven years after her disappearance.  Considering that circumstantial evidence and the reasonable inferences therefrom, the jury was provided with sufficient evidence to find beyond a reasonable doubt that the victim is dead.  *Blevins*, 314 Mich App at 357.

The second element of second-degree murder requires proof that the victim's death was caused by defendant.  *Roper*, 286 Mich App at 84.  Once again, defendant's letter and his statement to Burton were sufficient to establish this element.  Defendant described that he threw the victim out of the car in a violent fashion.  The letter did not describe when the victim actually died, but in any possible case, the jury was permitted to infer that it was an act of defendant that caused the death.  First, defendant could have caused the victim's death by throwing her from her car seat to the ground.  A jury would have been permitted to make that inference based on defendant's statement in his letter that he did not try to help the victim, but that he did not believe there was anything that could have been done.  Second, even if the victim survived that trauma, defendant also could have caused her death by leaving her alone in the woods without clothing.  A reasonable juror could infer that a four-month-old infant left outside in the elements—likely in a wooded, swampy area based on where defendant was sighted and the state of his Seedless shoes—would not be able to survive for any significant period of time.  Further, defendant's statement to Burton, that he got rid of the victim and they would never find her, provides an inference that it was defendant that caused the victim's death.  Thus, if the victim died by being thrown from the car or by being abandoned in the woods, a reasonable juror could infer that the ultimate cause of that death was an act of defendant.  Consequently, there was sufficient evidence provided that the victim's death was caused by defendant.  See *Blevins*, 314 Mich App at 357.

Next, defendant challenges the third element of second-degree murder, which requires proof that defendant acted with malice. *Roper*, 286 Mich App at 84. "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Goecke*, 457 Mich 442, 464; 579 NW2d 868 (1998). "The malice element for depraved heart murder is general mens rea." *Id*. "[I]ntent may be inferred from circumstantial evidence." *Henderson*, 306 Mich App at 11. "Indeed, 'because it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind[.]'" *Id*., quoting *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

"Malice may be inferred from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm." *People v Werner*, 254 Mich App 528, 531; 659 NW2d 688 (2002). "Because depraved heart murder is a general intent crime, the accused need not actually intend the harmful result." *Goecke*, 457 Mich at 466. "One way of expressing this concept is that malice may be established even absent an actual intent to cause a particular result if there is wanton and wilful disregard of the likelihood that the natural tendency of a defendant's behavior is to cause death or great bodily harm." *Id*. Stated differently, "[t]he prosecution is not required to prove that the defendant actually intended to harm or kill.  Instead, the prosecution must prove the intent to do an act that is in obvious disregard of life-endangering consequences." *Werner*, 254 Mich App at 531.

Certain evidence "tend[s] to establish defendant's consciousness of guilt." *Unger*, 278 Mich App at 225.  Specifically, "[m]inimal circumstantial evidence is sufficient to show an intent to kill, and that evidence can include a motive to kill, along with flight and lying, which may reflect a consciousness of guilt." *Henderson*, 306 Mich App at 11, citing *Unger*, 278 Mich App at 225–227.  Furthermore, evidence that a defendant had the opportunity to kill the victim "is logically relevant in a prosecution for murder." *Unger*, 278 Mich App at 224.

Viewing the facts in a light most favorable to the prosecution, defendant and Courtland had a long and tumultuous relationship. Defendant wanted Courtland to get an abortion or to give the victim up for adoption.  He would often pressure her to do so, and Courtland felt that she needed to lie about pursuing those options in order to avoid defendant's anger.  Further, defendant refused to take responsibility for the victim, asserting that Courtland was promiscuous and someone else likely was the baby's father.

Several of the witnesses' testimony established that defendant was unhappy and surprised when Courtland pursued a paternity lawsuit against him. The officer that delivered the summons in the suit testified that defendant was angry, defendant's mother testified that defendant was shocked by the suit, and Courtland testified that he was angry with her. On the day of the victim's disappearance, defendant submitted to a DNA test to determine whether he was the victim's father. Courtland testified that she and defendant had an argument about that, and he asked her not to take the test and that the baby be placed for adoption instead. Courtland's refusal to do so and her expressed intent to go through with the DNA testing angered defendant. He refused to take Courtland to the hospital for the test and a neighbor heard them arguing in the parking lot. Additionally, an expert witness testified that defendant's computer showed searches related to "fake adoption papers" and how to terminate your parental rights. Defendant searched for ways to relinquish his rights to the victim so that he could avoid paying child support. From these facts, based on evidence introduced at trial, a juror could infer that defendant did not want the victim in his life, and he was facing a situation where his imminent involvement would be legally required. Thus, defendant had motive to kill the victim after finally realizing that Courtland would never pursue the adoption route and therefore, his expressed desire to have the victim absent from his life no longer was viable through the adoption or his previous wish that Courtland would abort the baby. This abundantly establishes motive, which is supported by circumstantial evidence of defendant's intent to kill the victim. See *Henderson*, 306 Mich App at 11.

The expert witness regarding computers testified that defendant also made searches relating to having his name changed and the law related to international waters. A reasonable juror could infer that, in searching those things, defendant was planning an attempt to run away, possibly after committing a crime. The possibility of "flight" is evidence of a guilty conscience, and could have been used by the jury to infer defendant's intent. *Unger*, 278 Mich App at 225–227.

Defendant also told several lies during his recorded interview with Officer Posma. First, defendant stated that he only had a brief relationship with Courtland. Based on the evidence submitted at trial and the testimony off all of the other witnesses, defendant's relationship with Courtland was long and complex. Second, defendant lied when he told Officer Posma that Courtland had the victim. Courtland's testimony along with the victim's clothes, diaper bag, and car seat being found in defendant's possession revealed that defendant was not being truthful. Lastly, defendant lied about only going to Wendy's between

28

leaving Courtland's apartment complex and arriving home.  There were two hours between those times that are unaccounted for by defendant.  Testimony from eyewitnesses showed that defendant stopped at a fireworks stand and drove through an area of rough terrain in that same time period.  Further, the amount of time it would take to drive from Courtland's apartment to Wendy's to defendant's home does not amount to two hours.  Thus, in the moments immediately following the victim's disappearance, defendant told at least three lies to the police, two of which had the effect of making defendant look less culpable of the murder.  As this Court has held that lying to the police is evidence of a guilty conscience, these further allow for an inference of defendant's malice.  *Henderson*, 306 Mich App at 11.

The testimony at trial also shows that defendant had the opportunity to kill the victim.  Courtland's testimony was that defendant was the last person to be seen with the victim when he drove away from her apartment.  Additionally, defendant's letter established that the victim was in the back seat of defendant's car during that drive.  There were two hours unaccounted for immediately following defendant driving away from Courtland's apartment complex, during which defendant had his cellular telephone turned off and was seen driving into a wooded and swampy area.  Plus, defendant previously told Dan Ruba that he could get rid of a body and no one would ever be able to find it.  Thus, a reasonable juror could infer that defendant had the opportunity and means to kill the victim and dispose of the body, which also provides an inference of defendant's intent to kill.  *Unger*, 278 Mich App at 224.

Considering all of this evidence, as well as the previously summarized content of defendant's letter and statement to Burton, the jury was provided with two different scenarios, both of which would establish the malice element of second-degree murder.  There was the inference that defendant drove away with the victim in the back seat of his car with the intent to kill her.  As discussed, defendant had motive, opportunity, and later showed a guilty conscience, all of which can imply an intent to kill.  See *id.*  Considering the sheer amount of that circumstantial evidence, the requirement to prove defendant's intent to kill was satisfied.  *Kanaan*, 278 Mich App at 622.  The jury also could have reasonably concluded that, although defendant did not intend to kill the victim when he drove away from Courtland's apartment complex, he "intentionally set in motion a force likely to cause death or great bodily harm."  *Werner*, 254 Mich App at 531.  In particular, by leaving the victim alone in the woods, without clothing or any support, there was sufficient evidence to prove that defendant had "the intent to do an act that is in obvious disregard of life-endangering consequences."

29

*Id.*  In either case, there was sufficient evidence for a reasonable juror to find beyond a reasonable doubt that the defendant acted with malice. *Henderson*, 306 Mich App at 11.

The last element of second-degree murder is that defendant acted "without justification or excuse."  *Roper*, 286 Mich App at 84.  Although defendant contends that the prosecution failed to prove every element of second-degree murder, he has provided no argument, before the trial court or on appeal, that he had some justification or excuse for killing the victim.  To the extent that defendant suggests that the only evidence of the victim's death was that it was an accident, as reflected in defendant's letter, the jury was well supported in concluding otherwise. Burton's testimony that defendant said he got rid of the victim and could not be charged with murder allowed for a reasonable inference that the victim's death was not accidental.  Further, defendant's behavior of turning his cellular telephone off, going to a woodsy area, changing his shoes when he got home to inhibit the collection of evidence, and lying to the police, all suggested that the victim's death was not accidental. Consequently, there was sufficient proof on the record that defendant had no excuse or justification in killing the victim.  See *id*.

In sum, there was sufficient evidence of every element of second-degree murder for a jury to find defendant guilty beyond a reasonable doubt.  See *Hardiman*, 466 Mich at 428.

(Mich. Ct. App. Op., ECF No. 5-25, PageID.3017–3020.)

Petitioner has offered two responses to the court of appeals' analysis.  First, in his application for leave to appeal to the Michigan Supreme Court, he attacks the court of appeals' factual determinations.  He contends that Ms. Courtland perjured herself, that she pretended to remove the baby from the car at her apartment complex, that Petitioner drove away not realizing the baby was in the car, that he pulled on what he believed to be a stuck, empty carseat, and that such pulling on a stuck, empty carseat does not show an intent to kill.

Certainly, if *Jackson* required the Court to assess the sufficiency of the evidence by viewing it in a light that favored Petitioner, Petitioner's argument might call into question the court of appeals' analysis.  But that is not what *Jackson* calls for.  Indeed, Petitioner's argument turns the *Jackson* standard on its head.  It is the jury's province to determine credibility—the credibility of Courtland's account and the credibility of Petitioner's account as revealed through his out-of-court statements.  Those credibility determinations, however, impact the weight of the evidence, not its sufficiency.  Where the accounts of Courtland and Petitioner are in conflict, it is the jury's province to resolve that conflict and determine the facts by reasonable inference.

Petitioner does not directly challenge the court of appeals' thorough review of the evidence and reasonable inferences to be drawn from the evidence.  "The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)."  *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016).  Petitioner can overcome that presumption with clear and convincing evidence; he has not.  He does not offer any evidence to show that the court of appeals' factual determinations are unreasonable on the record.  The undersigned has reviewed the record and concludes that the appellate court's factual determinations are entirely reasonable based on the trial transcripts.

Similarly, Petitioner fails to demonstrate that the inferences identified by the court of appeals are unreasonable.  *Jackson* holds that it is the factfinder's province to draw reasonable inferences from basic facts to ultimate facts.  443 U.S. at 319.  In

*Coleman v. Johnson*, 566 U.S. 650 (2012), the Supreme Court provided guidance "in determining what distinguishes a reasoned inference from 'mere speculation.'" *Id*. at 655.  The Court described a reasonable inference as an inference that a rational factfinder could make from the facts.  The inferences identified by the court of appeals rationally flow from the underlying facts.  The inferences are not compelled by those facts.  The inferences may not even be more likely than not; they are simply rational. *Id*. at 656.

In Petitioner's case, however, the inferences identified by the court of appeals are compelling.  The jurors drew those inferences, and the undersigned, having read the transcript of the trial testimony, would draw the same inferences.

To succeed in his challenge, Petitioner must show that the inferences are irrational.  He has not done so.

Petitioner's second challenge to the court of appeals' sufficiency analysis appears in his habeas petition: "The evidence was insufficient . . . where no evidence was ever taken that a body had been located, or that anyone had witnessed Mr. Phillips doing anyone harm, or of disposal of a body." (Pet., ECF No. 1, PageID.10.) Essentially, Petitioner manufactures new "elements" that must be shown to prove second-degree murder.

It is the prerogative of the state to define the elements of the crime and that definition binds the federal courts.  *See Johnson*, 559 U.S. at 138 ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson*, 443 U.S. at 324 ("The respondents

have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses.  Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.").  Although the Due Process Clause guarantees criminal defendants a meaningful opportunity to present a complete defense, *California v. Trombetta*, 467 U.S. 479, 485 (1984), it is also the prerogative of the state to define whether or not a defense applies to a particular crime.  *See Foucha v. Louisiana*, 504 U.S. 71, 96 (1992) (acknowledging "the general rule that the definition of both crimes and defenses is a matter of state law . . . ."); *Gimotty v. Elo*, 40 F. App'x 29, 32 (6th Cir. 2002) ("States are free to define the elements of, and defenses to, crimes. . . . In determining whether a petitioner was entitled to a defense under state law, federal courts must defer to state-court interpretations of the state's laws . . . ."). If the State of Michigan holds that dead bodies and eyewitnesses are not elements of a crime or that the absence of dead bodies or eyewitnesses is not a defense, those determinations bind this Court.  Accordingly, the sufficiency challenge Petitioner raises in the petition is meritless.

## VI.    Jail credit

There is no inherent constitutional right to credit against a sentence for the time served in pretrial detention.  *Grays v. Lafler*, 618 F. Supp. 2d 736, 747 (W.D. Mich. 2008) ("A prisoner has no right under the federal constitution to earn or receive sentencing credits.")  It is entirely a creature of statute.  In Michigan, the credits flow from Mich. Comp. Laws § 769.11b:  "Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because

of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing." *Id.*  Before Michigan enacted its sentencing credit statute in 1966, criminal defendants in Michigan were not entitled to any credit against their sentence for the time they were held in jail before being sentenced. *Gray v. Harry*, No. 1:07-cv-246, 2010 WL 3885441, at *16 n.8 (W.D. Mich. Mar. 2, 2010).  The Michigan Court of Appeals rejected Petitioner's claim under the statute.

As this Court has stated repeatedly, Petitioner's entitlement to jail credit under Mich. Comp. Laws § 769.11b is a question of state law.[2]  "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.' " *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.' " *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases).  The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5.

---

[2] *King v. Lesatz*, No. 2:19-cv-111, 2019 WL 5387889, at *3 (W.D. Mich. Oct. 22, 2019); *Kirk v. Fenby*, No. 1:15-cv-682, 2017 WL 6391534, at *14 (W.D. Mich. Nov. 7, 2017); *Gray v. Curtin*, No. 1:09-cv-959, 2013 WL 6327824, at *11 (W.D. Mich. Dec. 5, 2013); *Pryor v. Smith*, No. 1:11-cv-739, 2011 WL 4036669, at *1 (W.D. Mich. Sep. 12, 2011); *Fisher v. Bell*, No. 2:09-cv-246, 2011 WL 8473009, at *6 (W.D. Mich. Jul. 13, 2011); *Weil v. Howes*, No. 1:07-cv-401, 2010 WL 3431660, at *3 (W.D. Mich. July 19, 2010); *Willavize v. Howes*, No. 1:09-cv-62, 2009 WL 4639483, at *3 (W.D. Mich. Dec. 2, 2009); *Quinn v. Curtin*, No. 1:09-cv-983, 2009 WL 4021117, at *4 (W.D. Mich. Nov. 19, 2009); *Grays*, 618 F. Supp. 2d at 747.

Petitioner's challenge derives not from the federal constitution, but from state law. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). " '[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.' " *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76). The state court's determination that Petitioner is not entitled to additional credit for time served is binding on this Court. The state courts' rejection of Petitioner's state-law argument is axiomatically correct. The issue Petitioner raises here is simply not cognizable on habeas review.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529

35

U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.


Dated:  May 3, 2021                            /s/ Phillip J. Green
                                               PHILLIP J. GREEN
                                               United States Magistrate Judge


## NOTICE TO PARTIES

ANY OBJECITONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).